Em. H. Mettler & Sons v. Commissioner.
Em
Docket No. 12624.
United States Tax Court
1949 Tax Ct. Memo LEXIS 225; 8 T.C.M. (CCH) 329; T.C.M. (RIA) 49078; March 20, 1949
George H. Zeutzius, Esq., and A.P.G. Steffes, Esq., 510 So. Spring St., Los Angeles, Calif., for the petitioner. W. J. McFarland, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: Respondent determined deficiencies in income and excess-profits taxes of the petitioner for the year 1942 in the amounts of $5,672.72 and $84,683.04, respectively. Error is alleged in disallowance of a part of the deduction taken for salaries. Petitioner abandoned an allegation of error in determining its average base period net income and the excess profits credit for 1942. Respondent concedes an error with respect to State franchise tax in computing petitioner's excess-profits credit and a mathematical error. These will be taken into consideration in the computation *226 under Rule 50. The stipulated facts are found as stipulated and are summarized herein. Other facts are found from the evidence presented. Findings of Fact Petitioner was incorporated under the laws of California on December 22, 1941, with an authorized capital stock of $400,000, divided into 4,000 shares of common stock of a par value of $100 per share. Its principal office is at Shafter, Kern County, California, and its business was in 1942, and is now, chiefly that of developing, producing, harvesting, packing, shipping and marketing potatoes for seed and commercial use. Petitioner acquired, as of January 1, 1942, all of the business and assets theretofore owned by Em. H. Mettler and his wife, Pauline Mettler, in exchange for the issuance to them of 3,264 shares of its stock. By its articles of incorporation, petitioner was, and is, authorized, among other things, "To engage in the business of farming and in any activity thereunto related, including the ownership, operation and management of farms, and the planting, growing, cultivating, harvesting, preserving, processing, manufacturing, canning, packing, grading, storing, handling, marketing and brokerage of agricultural *227 products." The articles also confer such other broad powers as generally are possessed by business corporations. Petitioner kept its books on the accrual basis and filed its income and profits tax returns on the accrual and calendar year basis. It filed its income and declared value excess-profits tax and excess-profits tax returns for the calendar year 1942 with the collector of internal revenue for the sixth district of California at Los Angeles. Respondent increased petitioner's 1942 net income and excess-profits net income in the amount of $106,500 by disallowing that amount of the total salaries of $175,000 paid by petitioner during 1942 to its five key employees who also were its chief officers and directors. The following explanation was given by respondent in his deficiency letter: "(a) The deductions for salaries claimed on your income tax return for the calendar year 1942 are disallowed in the amounts stated below, since deductions claimed on your return are held to be unreasonable under section 23 of the Internal Revenue Code: Compensation
Reasonable
Compensation
"Name
Claimed
Compensation
Disallowed
"Em. H. Mettler
$ 35,000.00
$20,000.00
$ 15,000.00
"S. J. Fairchild
35,000.00
15,000.00
20,000.00
"Orvin Mettler
35,000.00
13,500.00
21,500.00
"Dan E. Weitz
35,000.00
12,000.00
23,000.00
"Raymond Mettler
35,000.00
8,000.00
27,000.00
"Total
$175,000.00
$68,500.00
$106,500.00"
*228 At the first meeting of petitioner's board of directors, on January 6, 1942, Em. H. Mettler was elected president, Orvin Mettler, vice-president, and Stephen J. Fairchild, secretary-treasurer. On February 3, 1942, the directors elected Dan E. Weitz assistant secretary, authorized each director to draw on the petitioner's bank account and outlined the duties of each as follows: "A motion was made and carried that the directors shall have the following responsibilities in addition to their duties as officers: Em. H. Mettler shall have general supervision of crop production. Orvin Mettler shall have supervision of the packing, shipping, sales including seed sales, and immediate supervision of the production at Shafter. Dan E. Weitz shall have supervision of the equipment of the corporation and the immediate supervision of production at Lerdo. Raymond A. Mettler shall have immediate charge of the production at Edison. Stephen J. Fairchild shall have charge of production at Santa Maria." On March 3, 1942, at a regular meeting of the board of directors, held at Shafter, California, the following proceedings were had: "The matter of salaries for the managers of various enterprises *229 of the corporation was brought up. After discussion, it was decided that salaries should be paid along similar lines to those paid by the business prior to incorporation. "Upon motion duly made, seconded, and carried the following resolution was adopted: "Resolved: "That salaries for the year 1942 for employees of the corporation listed below shall be to each one-sixth of the net income of the corporation computed without deducting the salaries fixed herein. That regardless of the above, the salary for 1942 for each employee listed herein shall not be less than $12,000.00 nor more than $35,000.00. The employees referred to herein are "Em. H. Mettler "Orvin Mettler "Stephen J. Fairchild "Raymond A. Mettler "Dan E. Weitz." The Commissioner of Corporations of the State of California on March 6, 1942, authorized the issue of 3,264 shares of petitioner's stock to Em. H. Mettler and Pauline Mettler in exchange for the assets and business described in their application, having a stated valuation of $326,400. Such shares were issued by certificate dated May 23, 1942. On June 25, 1942, this certificate was cancelled and stock was issued as follows: 1644 shares to Em. H. *230 Mettler and Pauline Mettler. 500 shares to Stephen J. Fairchild and Helen M. Fairchild. 500 shares to Orvin Mettler and Merle F. Mettler. 500 shares to Dan E. Weitz and Gertrude P. Weitz. 120 shares to Raymond A. Mettler and Thea C. Mettler. The shares issued to the last four couples listed were purchased by them from the first couple listed. No dividends were paid by petitioner at any time during 1942. In his income tax return for 1936 Em. H. Mettler claimed a deduction of $105,412.98 for salaries paid to Orvin Mettler, Fairchild and Weitz. The Bureau of Internal Revenue notified Mettler of an adjustment based upon an interest credit, but did not disallow any part of the deduction for salaries for 1936. Em. H. Mettler, Orvin Mettler, Raymond Mettler, Fairchild and Weitz constituted petitioner's board of directors in 1942. Orvin and Raymond Mettler are sons of Em. H. Mettler. Fairchild and Weitz are, and were in 1942 and for several years prior thereto, sons-in-law of Em. H. Mettler. Mettler paid the following amounts to his sons and sons-in-law for the years indicated: Year
Orvin Mettler
Fairchild
Weitz
Raymond Mettler
1934
$ 6,440.40
$ 6,440.40
1935
5,380.89
5,380.89
$ 4,842.80
1936
36,211.37
36,211.37
32,950.24
1937
26,257.98
26,257.97
25,054.46
1938
11,839.50
11,839.50
11,839.50
1939
4,743.61
4,743.61
4,743.61
1940
17,116.08
17,116.08
17,116.08
$10,269.64
1941
2,511.36
2,511.36
2,511.36
1,906.81
*231 Mettler's gross income from farming, amounts paid as salaries to these employees, and net farming income for the years indicated was: Year
Gross Income
Salaries
Net Income
1936
$420,198.35
$105,412.98
$86,150.49
1937
372,917.21
79,570.40
72,182.28
1938
240,946.78
35,518.50
33,914.88
1939
139,983.61
14,230.83
9,509.32
1940
242,294.77
61,617.88
28,726.88
1941
178,892.71
9,440.89
(2,805.30 - loss)
Petitioner's gross farming income in 1942 was $606,026.88 and its net income before salaries here involved was $219,541.33. During 1942 petitioner operated 14 ranches in Kern and Santa Barbara Counties in California, covering about 1,800 acres, of which petitioner owned about 400 acres. All lands were cultivated and nearly all were irrigated. Em. H. Mettler was born November 15, 1887. He began farming in California in 1901 and began farming at Shafter in 1919, producing cotton, potatoes, grapes, tree fruit and alfalfa. He continued farming at Shafter from 1919 to 1932 and in that period acquired other farms. Mettler bought foundation potato seed and raised commercial seed potatoes which he sold. In 1937 his potatoes became diseased with *232 ring-rot and the market was lost. Thereafter he commenced to develop a foundation seed of his own, and established a laboratory to reduce diseases in his product. His organization devised or adopted and developed methods of combatting potato diseases and of improving the quality of potatoes. He was considered by some as the best potato grower in California and the demand for Mettler's potatoes in 1940 and thereafter always exceeded the supply. His organization devised machinery and equipment for planting and for handling potatoes in bulk. Orvin Mettler was born May 29, 1907. He attended California Polytechnic College for one semester, and then entered his father's employ in 1932. He was associated with his father from 1932 through 1941. In 1942 he entered petitioner's employ and had general supervision of the ranches at Shafter, as well as of the packing sheds, purchasing, grading, and marketing. Stephen J. Fairchild was born November 1, 1902. He attended Occidental College in Los Angeles County for one year, University of California Agricultural School at Davis for two years, and University of California at Berkeley for one year. He received the degree of Bachelor of Science. *233 He married in 1927. He was employed in agricultural work of various kinds, including six years as foreman of a citrus association. On December 1, 1933, he entered the employ of Mettler under a written agreement by Mettler to give him one-sixth of the net profits of Mettler's farming activities for one year and was in Mettler's employ until 1942 when he entered the employ of petitioner. He did research concerning potatoes while in college and thereafter. While in Mettler's employ he did bookkeeping and office work and participated in Mettler's development of a foundation seed potato. In 1942 he had charge of the packing shed at Santa Maria Ranch. Dan E. Weitz was born February 25, 1910. He attended Junior College at Bakersfield for one year. He entered Mettler's employ in 1934 at an hourly wage. In 1935 Mettler agreed to pay him 15 per cent of his net profits. In 1938 and until 1941 Mettler paid Weitz one-sixth of his net profits. In 1939 Weitz supervised the Lerdo district and the maintenance shop at Shafter for all Mettler's equipment. Weitz entered petitioner's employ in 1942, having the same duties. Raymond Mettler was born August 29, 1918. He attended Santa Maria Junior College *234 for one year and University of California College of Agriculture at Davis where he graduated in 1939. He then went to work for his father. In 1940 and 1941 Mettler paid Raymond 10 per cent of his profits. Raymond had charge of preparing the Edison District land for production. In 1942 Raymond entered the employ of petitioner and had charge of the Edison ranch. A reasonable allowance for compensation for the services performed in 1942 for petitioner by each of the above-named individuals is as follows: Em. H. Mettler
$20,000
S. J. Fairchild
15,000
Orvin Mettler
13,500
Dan E. Weitz
12,000
Raymond Mettler
8,000
Opinion The first contention of petitioner is that the respondent is without power to disallow in part as excessive previously authorized salaries actually paid by petitioner during the taxable year 1942, for services rendered to it in the carrying out of its business. Section 23 (a) (1) (A) provides that in computing net income there shall be allowed as a deduction "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation *235 for personal services actually rendered * * *." The petitioner argues that the "including" clause was added by section 234 (a) (1) of the Revenue Act of 1918 to make provision, in connection with the excess profits provisions of the Act of October 3, 1917, for a reasonable allowance as compensation for services rendered, though none was actually paid, in order to rectify the hardship otherwise worked upon partnerships, individual proprietorships and closely held corporations, and that the amendment was intended as a liberalization rather than a restriction in its application. Even if it be assumed that petitioner is correct in its argument, respondent's inquiry as to reasonableness would not be barred. In Botany Worsted Mills v. United States, 278 U.S. 282, a case which arose under the 1916 Act as amended by the War Revenue Act of 1917, prior to the addition of the so-called "including" clause, the Supreme Court of the United States said: "* * * it is clear that extraordinary, unusual, and extravagant amounts paid by a corporation to its officers in the guise and form of compensation for their services, but having no substantial relation to the measure of their services *236 and being utterly disproportioned to their value, are not in reality payment for services, and cannot be regarded as 'ordinary and necessary expenses' within the meaning of the section; * * *." Subsequent to this decision and the incorporation of the "including" clause in the statute, this and other tribunals, in a long line of decisions, have decided that where issue is joined on the question of reasonableness of salaries paid for services rendered, the Commissioner's determination carries a clear presumption of correctness and places upon the taxpayer the burden of proving that it is entitled to a deduction larger than that determined by the Commissioner. Moreover, the exact wording of what is now section 23 (a) (1) (A) of the Code has been incorporated in every revenue act since 1918, and the respondent's regulations have been substantially the same in each reenactment. These regulations have uniformly stated that the test of deductibility of compensation payments is whether they are reasonable and are in fact payment for services. The continued reenactment of the statute must be construed as legislative approval of these regulations. The Commissioner has the power under section *237 23 (a) (1) (A) to disallow as deductions compensation paid which, in his judgment, does not meet the test of reasonableness. Petitioner also argues that the failure expressly to plead in the answer that the salaries represented a distribution of corporate profits or dividends in the guise of salaries precludes respondent from advancing such a contention in support of the mere denial of the reasonableness of such salaries, since such a contention amounts to an allegation of bad faith and collusion, or fraud, and fraud must be affirmatively pleaded by the respondent, who also has the burden of proof to establish it; and if it is not pleaded, it cannot be proved. Petitioner's argument is without merit. No attempt is made herein to assert a penalty for fraud. The situation here present is a frequent one and the possibility that large salaries paid to stockholders may have the effect of distributing profits is inherent in nearly all such cases. A corporation which pays exorbitant amounts as salaries to stockholders may not be heard to complain that the Commissioner did not see fit to raise the issue of fraud. Petitioner contends that the salaries paid are deductible as ordinary and *238 necessary business expenses, in that they were based upon an established incentive percentage-of-income formula that had its inception in arm's-length transactions which were fair and reasonable when negotiated years before. Petitioner also argues that the facts show the five employees had extraordinary duties and performed exceptional services; they had specialized training and outstanding abilities; they devoted unusual time, effort, talent and skill in the planning and execution of petitioner's operations; they achieved a high degree of success; and they held an enviable reputation in the potato industry. As petitioner says, whether compensation is reasonable is essentially a question of fact to be determined by the facts and circumstances in each particular case. The petitioner's requested findings of fact cover 90 pages of its brief and amount to a narrative restatement of the testimony. Much of this evidence related to occurrences after the taxable year and has but little probative value except as it tends to show the abilities and industry of these men in 1942. Petitioner is a closely held family corporation. Mettler, his two sons, and two sons-in-law were the sole directors, *239 the principal officers, and with their wives were the sole stockholders and would receive whatever dividends petitioner might declare. The profits could be distributed as dividends or as salaries with no essential difference in effect except upon corporation and individual income taxes. As directors these five men voted themselves each one-sixth of petitioner's profits as salary for 1942, with a minimum of $12,000 and a maximum of $35,000. They actually received the maximum. Under these circumstances the salaries may properly be scrutinized to determine whether the deduction is a reasonable allowance or excessive and, in effect, a distribution of profits. McMillan Metal Co., 2 B.T.A. 797; Barto Co. 21 B.T.A. 1197. If the compensation arrangement was entered into with a view to distributing the profits in the guise of salaries or to distribute corporate funds among members of the family otherwise than for services rendered of equivalent worth, it will not justify the deduction in full of the amounts paid. See L. Schepp Co., 25 B.T.A. 419, 429, and cases there cited. The petitioner stresses the fact that Em. H. Mettler, for several years, had *240 paid some of these men each one-sixth of the profits of his business and argues that the long-established basis of compensation which Mettler evidently considered fair when made was likewise a fair contract for the corporation which took over Mettler's business. The answer to this argument is that the men involved were members of the family when the first percentage arrangements were made and family distributions are equally forwned upon when their purpose is to relieve taxpayers of higher surtaxes which would otherwise result. Mettler may have been quite willing to distribute part of his profits prior to 1942 among his sons and daughters and their spouses in the guise of salaries, but this does not justify the corporation in distributing 1942 profits to its stockholders in the form of excessive salaries. The business was family controlled both before and after the corporation was formed. Since the percentage arrangement was at alltimes confined to members of the family it derives no special immunity from the fact that it was of long standing. Furthermore, the corporation guaranteed a minimum of $12,000 a year regardless of profits while under the arrangement prior to incorporation *241 there was no guaranteed minimum. Thus, the corporation's percentage arrangement was essentially different from Mettler's. While the applicable regulations recognize compensation paid under a contingent agreement where in the actual working out of the contract the compensation may prove to be greater than the amount which would ordinarily be paid (Regulations 111, section 29.23 (a)-6, (2)), the arrangement here does not meet the requirement of the regulations that the compensation be paid pursuant to a free bargain, not influenced by consideration other than of securing on fair and advantageous terms the services of the individual. The petitioner also points to the fact that the Commissioner allowed Mettler to deduct salaries paid in 1936 to Orvin Mettler, Fairchild and Weitz amounting to $105,412.98 as justifying the allowance of $35,000 to each of the five men here. Respondent determined the salaries paid by petitioner in 1942 to be excessive and our problem is to decide whether this is error. The respondent is not bound by any prior action or inaction with respect to salaries paid by a different taxpayer for a different year. See F. M. Hubbell Son & Co., 19 B.T.A. 612; *242 James Couzens, 11 B.T.A. 1040. Petitioner alleges that some of these employees had offers from other sources of large salaries if they would enter other employment and argues that these offers prove the value of the services involved here. Certain of the offers were made several years after 1942 and have little weight in showing the worth of services rendered in 1942. As to others, the testimony is not clear as to the date of the offer, the amount of compensation proposed or the exact duties involved. The persons who are said to have made these offers were not present as witnesses and their absence is unexplained. The evidence is not sufficient to permit a fair comparison between the offered employment and the services performed for the petitioner. One witness, Boyd, testified that in his opinion $35,000 was reasonable compensation for the duties performed by each of these men, but gave no sufficient factual basis for his opinion. The value of opinion evidence depends upon the qualifications of the witness and his familiarity with the underlying facts upon which a judgment is expressed. Boyd had never been a stockholder or director of a corporation with the duty of *243 determining a reasonable salary for a supervisory employee performing services such as those involved herein, nor does it appear that he had sufficient knowledge of the nature and quality of the services performed by these men to appraise their value. He was a wholesale distributor of potatoes and onions and handled potatoes grown by Mettler and petitioner, and his experience lay principally in that phase of the business. His opinion is of little probative value. While the petitioner's gross revenue in 1942 exceeded that of Mettler in any prior year and this may have been due in some part to the abilities and industry of these employees it appears also that in part these increased earnings were due to the war demand for potatoes to supply the armed forces and to the Government's subsidy and production incentive program and to favorable weather conditions. In the years 1936-1941, Mettler averaged a profit after salaries and before taxes of about $40,000 yearly. While part of these earnings may represent the value of his services and provide some indication of what would be reasonable compensation for his services to petitioner in 1942, it is obvious that a part also must be considered *244 as a return on his investment in his business. The amount of his investment is not shown until January 1, 1942, when he turned over to the corporation assets of the stated value of $326,400. Petitioner authorized payment of equal amounts to these men regardless of differences in age, education, experience and duties undertaken by them, and guaranteed each a minimum of $12,000 a year regardless of profits of its operations. These salaries were not fixed as the result of arm's length dealing. The directors were not concerned with securing these services on terms fair and advantageous to the corporation. The respondent allowed, $20,000 as to Em. H. Mettler, $15,000 as to Fairchild, $13,500 as to Orvin Mettler, $12,000 as to Weitz, and $8,000 as to Raymond Mettler as reasonable salaries. We have considered all the material evidence and have found that the amounts allowed by the respondent represent reasonable salaries paid by the petitioner to these employees for the services they rendered it in 1942. The respondent's disallowance is sustained. Decision will be entered under Rule 50.